## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## MONROE DIVISION

RUSSELL LAIN                                    CASE NO. 3:19-CV-01301

VS.                                             JUDGE TERRY A. DOUGHTY

ENTERGY LOUISIANA, LLC                          MAG. JUDGE KAYLA MCCLUSKY

## RULING

Pending here is a Motion for Summary Judgment filed by Defendant Entergy Louisiana,

LLC ("Entergy") [Doc. No. 40].  Plaintiff Russell Lain ("Lain") has filed an opposition [Doc.

No. 45].  Entergy has filed a reply to the opposition [Doc. No. 46].  Lain has filed a sur-reply

[Doc. No. 49].

For the following reasons, Entergy's motion is GRANTED, and Lain's claims are

DISMISSED WITH PREJUDICE.

## I.      FACTS AND PROCEDURAL HISTORY

Entergy is an energy company supplying electric power to fifty-eight (58) parishes in

Louisiana and is headquartered in New Orleans, Louisiana [Doc. No. 1, Exh. A]. Lain became an

Entergy employee at its Fort Polk location in Louisiana in September 2011 [Lain Deposition,

Doc No. 40-2, p. 6]. Before becoming an Entergy employee, Lain worked twenty-three (23)

years for Northeast Power Cooperative ("NPC") where he was positioned as a B-lineman. [*Id.,* p.

25]. A B-lineman at NPC is the highest non-supervisory position one can achieve. [*Id.*]. Lain

moved from NPC to Entergy in order to obtain higher pay and better employment benefits. [*Id.*,

p. 33]. After accepting the job, Lain attended a mandatory Entergy and Skills Assessment

Training, which was used to assess the level of skill of new employees. [*Id*., p.  128].

Lain's assessment matched the position of a Mechanic II. [*Id*., p. 37]. A Mechanic II is

considered a lower position than a Sr. Mechanic, although it is expected that further training and

experience will lead to a promotion to Sr. Mechanic within six (6) years [Gene Cupit ("Cupit")

Declaration, Doc. No. 40-9, ¶ 5; 53-54]. After Lain had worked for two and a half years as a

Mechanic II at the Fort Polk location, a job position opened in Winnsboro, Louisiana, which is

closer to Lain's family in Monroe, Louisiana [Lain Deposition, Doc. No. 45-3, p.56]. On or

around June 22, 2014, Lain was offered and accepted the new job position [Cupit Declaration,

Doc. No. 40-9, ¶ 6].

At the end of 2014, Cupit, Lain's supervisor, conducted performance evaluations [*Id*., ¶

8]. Lain received a grade of "Meets Some Expectations" for four goals and a grade of "Meets

Expectations" for three goals, while also receiving positive feedback about his personality and

contributions to Entergy. [*Id.* p. 9]. However, sometime between 2014 and 2015, Cupit noted that

Lain's skills became "subpar." [*Id*., ¶ 10]. Cupit stated that Lain worked hard but was

comfortable with what he was doing and expressed no desire to be promoted to Sr. Mechanic

[*Id*.] Cupit also stated that since Lain was only a Mechanic II, a Sr. Mechanic had to observe

Lain on certain tasks, which hindered the completion of other jobs. Cupit expressed that this

congested the daily routine, which is why he hastened his efforts to promote Lain to the status of

Sr. Mechanic. [*Id*. at ¶ 11].

In his 2015 performance review, Cupit wrote that "…Russell must step up and take more

responsibility for his training and skill development to be considered Sr. Mechanic!" [Cupit

Deposition, Doc. No. 40-3, p. 80]. Cupit discussed his dissatisfaction of Lain's performance with

Lain, to which Lain seemingly agreed. [*Id,*. at p. 123-4].

Thereafter, Lain expressed to his co-workers his desire to become Sr. Mechanic. Lain

alleges, however, that he was demoralized by his coworkers, Sr. Mechanics, Shane Easterling

("Easterling") and John Blackwell ("Blackwell") who repeatedly called him racial names, such

as "the Nigger," "Thick Lips," and "Boy." [Lain Deposition, Doc. No. 45-2, p.76]. Lain admits that Cupit, his supervisor, never engaged in this behavior. [*Id*.] Lain told Cupit that his co-workers were "calling him names," but never included that the names involved racial content. [*Id.* p. 252]. Nevertheless, Lain believes that Easterling and Blackwell had great influence on Cupit's perception of him, which thereby led to his job demotion.

Lain also states that he felt excluded because he was not allowed to take home trucks, yet his co-workers, Easterling and Blackwell were. In Lain's deposition, he claimed that he was not allowed to take home trucks in Fort Polk, but he never had any complaints about his employment there [Lain Deposition, Doc. No. 40-2, pp. 39;54].

In 2011, when Lain began working for Entergy, he and all other employees were required to pass a Fatal Five test. At that time, Lain passed the test [*Id*., p.128]. However, in October of 2016, Cupit asked Lain to retake the test. [*Id.,* p. 131]. Lain then failed two Fatal Five tests. Under Entergy's policy and procedures, a lineman must pass this test to continue work.

Lain was placed on a performance improvement plan ("PIP") to help motivate and improve his performance. After an extensive time in PIP, Cupit sent Lain to the Knowledge and Skills Training ("KAST") center to be independently evaluated [*Id*., pp. 130-131]. Lain failed six written assignments as part of the evaluation [*Id*., p. 131]. The evaluator expressed concern and wrote "Based on the evaluation, Russel needs improvement on all levels. In my opinion he is not capable of a lead position at this time." [Cupit Declaration, Doc. No. 40-9, ¶ 22]. The "lead position" to which the evaluator was referring was the Mechanic II position that Lain had held for more than five years, and not the Senior Mechanic position. In other words, Lain did not test high enough to perform his own job, much less the Senior Mechanic job. [*Id*.]

Subsequently, Cupit discussed with his supervisor, Todd Bordelon ("Bordelon"), Lain's options with Entergy. The two agreed that Lain could not remain in his Mechanic II position, but they did find Lain another job as a meter services installer in Monroe, Louisiana [*Id.*, ¶ 25].

Lain asserts that, on May 17, 2017, his co-workers ridiculed him on Facebook by saying he was, "too slow to do anything." [Lain Deposition, Doc. No. 40-2, p. 16]. However, he admits that only heard of the Facebook post from his wife and never actually saw it for himself. [*Id.*, p.17]. Additionally, Lain states that neither he nor his wife have any screenshots of the post. [*Id.*]

On August 11, 2017, Cupit had a conversation with Lain and informed him that because Lain did not progress over a six-year time span, his options were to either be terminated or be transferred to the meter service installer position in Monroe, Louisiana [*Id.*, p. 165].

Lain chose to transfer, effective October 22, 2017. A week later, Lain became seriously ill from an infection and was hospitalized for forty (40) days [*Id.*, pp. 170-72]. Lain applied for short-term and long-term disability benefits through Entergy and was awarded both, and he was also awarded Social Security Disability benefits. [*Id.* at 118, 173, 245; 106-09]. Lain did not return to work due to his injury. Approximately three (3) years after the last day Lain worked, he received a notice of termination from Entergy. [*Id., p.* 203].

On January 2, 2018, Lain submitted an intake questionnaire to the EEOC. [*Id.* at 192, 197]. The EEOC issued a Notice of Dismissal and Rights in May 2019. [*Id.* at 201]. On August 2, 2019, Lain filed suit against Entergy in the Fifth Judicial District Court for Franklin Parish, Louisiana, claiming race discrimination and intentional infliction of emotional distress. [Doc. No. 1]. On October 4, 2019, the suit was removed to this Court.

Entergy contends in its motion for summary judgment that it is entitled to judgment as a matter of law dismissing all of Lain's claims. The issues are fully briefed, and the Court is prepared to rule.

## II.    LAW AND ANALYSIS

### A.    Standard of Review

Under Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992); *see also* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be . . . disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. However, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Thus, Summary

Judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party."
*Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)); *see also Ruiz v. Whirlpool, Inc.*, 12 F.3d 510, 513 (5th Cir. 1994) ("testimony based on conjecture or speculation is insufficient to raise an issue of fact to defeat a summary judgment motion because 'there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . . If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.'").

### B.    Analysis

#### 1.    Race Discrimination Claim

Lain brings a claim for racial discrimination under Title VII of the Civil Rights Act of 1964. Title VII prohibits employers from discriminating against employees on a number of grounds, including race. 42 U.S.C.§ 2000.  To establish a *prima facie* case of discrimination, the plaintiff must either present direct evidence of discrimination or, in the absence of direct evidence, rely on circumstantial evidence using the *McDonnell Douglas* burden-shifting analysis. Under *McDonnell Douglas*, the plaintiff carries the burden to prove that (1) he belongs to a protected class; (2) he was qualified for the position at issue; (3) he was the subject of an adverse employment action; and (4) he was replaced by someone outside his protected class or was treated less favorably than other similarly situated employees outside his class. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); s*ee also Lee v. Kan. City S. Ry. Co., 574 F.3d 253, 259* (5th Cir. 2009).

If a plaintiff establishes a *prima facie* case, the burden shifts to the employer to offer a legitimate, nondiscriminatory reason for the adverse-employment action. *McDonnell Douglas*, 411 U.S. at 802. If the employer can show a legitimate, non-discriminatory reason for the

adverse-employment action, the presumption of discrimination disappears, and the burden shifts

back to the plaintiff to show either that the proffered reason was a pretext for discrimination, or

that the plaintiff's protected status was another motivating factor for the decision. *Alvarado v.*

*Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007). To overcome a legitimate, nondiscriminatory

reason for termination, the plaintiff must show something beyond disagreement with the

employer's decision. *Bryant v. Compass Grp. USA Inc*., 413 F.3d 471, 478 (5th Cir. 2005)

("Disparate treatment of similarly situated employees is one way to demonstrate unlawful

discrimination and retaliation.").

### a.      Prima facie case of discrimination

Lain acknowledges that there is no direct evidence that Entergy demoted him because of

his race [Lain Opposition, Doc. No. 45, p. 18].  However, the inquiry does not end there. As

stated above, if Lain cannot prove his case with direct evidence of discriminatory motive, he can

still rely on indirect evidence.  *McDonnell Douglas*.

Entergy asserts that Lain cannot establish two elements of a *prima facie case*—that the

actions about which he complains, with the exception of being demoted, were adverse

employment actions, and that he was treated less favorably than similarly situated employees.

### i.      Adverse employment action

To satisfy the third prong of the *prima facie case*, a plaintiff must show that he was the

subject of an adverse employment action. Adverse employment actions consist of "ultimate

employment decisions" such as hiring, firing, demoting, promoting, granting leave, and

compensating. *Thompson v. City of Waco*, *Tex.*, 764 F.3d 500, 503 (5th Cir. 2014).

Lain alleges in his Complaint that he was not allowed to take trucks home, he was

ignored and ostracized by colleagues, he was unfairly targeted for performance reviews and

further training, he was demoted, and he was called racial names. However, in terms of adverse employment actions, Entergy contends that the only act that meets the legal threshold is Lain's demotion.

The Court agrees. As the Fifth Circuit recognized in *Roberson v. Game Stop/Babbage's*, 152 Fed. Appx. 356, 360 (5th Cir. 2005), "[o]ur court has a strict interpretation of the adverse employment element of the prima facie case for discrimination under Title VII." Only "ultimate employment decisions" are actionable adverse employment actions for Title VII purposes. McCoy, 492 F.3d at 559 (quoting *Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002)). Ultimate employment decisions include hiring, granting leave, discharging, promoting, and compensating. *Green*, 284 F.3d at 657; *Hernandez v. Crawford Bldg. Material Co.*, 321 F.3d 528, 532 n.2 (5th Cir. 2003). Title VII does not cover "every decision made by employers that arguably might have some tangential effect upon those ultimate decisions." *Banks v. E. Baton Rouge Parish Sch. Bd.*,320 F.3d 570, 575 (5th Cir. 2003). "[A]n employment action that does not affect job duties, compensation, or benefits is not an adverse employment action." *Pegram v Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004) (citation and internal quotations omitted).

Further, negative performance evaluations and PIPs do not rise to the level of adverse employment actions. *See,e.g., Welsh v. Fort Bend Indep. Sch. Dist.*, 941 F.3d 818, 824 (5th Cir. 2019) ("An employer's decision to place an employee on a performance improvement plan is not an adverse employment action."); *Turner v. Novartis Pharms. Corp.*, 442 Fed. App'x. 139, 141 (5th Cir. 2011) (holding that placement of employee on PIP is "not an ultimate employment decision"); *Brown v. Praxair, Inc.*, 2019 U.S. Dist. LEXIS 122839, *5-6 (M.D. La. July 23, 2019) (holding that plaintiff failed to prove he suffered an adverse employment action

because"[b]eing offered a PIP does not qualify as an adverse employment action, as it is not an ultimate employment decision").

Additionally, Lain's allegation that he was ostracized by coworkers does not constitute an adverse employment action. *See, e.g., Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 332 (5th Cir. 2009) (no adverse employment action where plaintiff's personal belongings were taken from her desk, her door locks were changed, she was chastised and ostracized by co-workers and supervisors, and she was assigned a heavier workload); *Hernandez*, 321 F.3d at 532 n.2 (identifying "ostracism by coworkers" among activities that are not ultimate employment decisions); *Payne v. Fanning*, 2016 U.S. Dist. LEXIS 113293, *27-28 (W.D. La. June 22, 2016) (holding that ostracism "is not cognizable under Title VII," as "[o]stracism by one's co-workers is not an adverse employment action" (citations omitted)).

Nor does Lain's complaint about the company truck he was assigned constitute an adverse employment action. *See, e.g.,Wheeler v. BNSF RY. Co*., 418 Fed. App'x. 738, 748-49 (10th Cir. 2011) (defendant's failure to provide plaintiff with vehicle to use was insufficient to constitute an adverse employment action); *Roney v. Ill. DOT*, 474 F.3d 455, 461 (7th Cir. 2007) (plaintiff's claim he was refused use of state vehicle is not a materially adverse employment action); *see also Jackson v. Houston Indep. Sch. Dist*., 1999 U.S. App. 12 LEXIS 40220, *12-14 (5th Cir. June 29, 1999) (refusal to assign plaintiff a new company vehicle is not an ultimate employment decision).

Finally, Lain himself acknowledges that he suffered an adverse employment action only in that he was demoted. [Lain Opposition, Doc. No. 45, p. 20; Lain Sur-Reply, Doc. No. 49, p. 4].

Therefore, the Court finds that Lain has met his minimal burden of showing he suffered an adverse employment action, but only by being demoted.

Having found that Lain suffered an adverse employment action, the Court will next consider Entergy's contention that Lain has failed to satisfy the fourth prong of the analysis.

## ii.        Disparate treatment

To satisfy the fourth prong of a *prima facie* case, a plaintiff must show (a) he was replaced by someone outside his protected class, or, (b) he was treated less favorably than other similarly situated employees outside his class, under nearly identical circumstances. *McDonnell Douglas*.

As indicated above, the only adverse employment action at issue here is Lain's demotion. However, Lain offers no evidence that he was treated less favorably than other similarly situated employees outside his class, with regard to demotions. To establish disparate treatment, a plaintiff must show the employer gave preferential treatment to another employee outside the protected class under nearly identical circumstances. *Lee*, 574 F.3d at 260.

The Court finds that Lain has failed to satisfy this prong of the analysis because he has not shown that he was treated less favorably than other similarly situated employees outside his class, under nearly identical circumstances, with regard to his demotion.

However, assuming *arguendo* that Lain has established a *prima facie* case of race discrimination, the Court will next consider whether Entergy has produced a legitimate, nondiscriminatory reason for the adverse-employment action, and, if so, whether Lain has carried his burden of showing either that the proffered reason was a pretext for discrimination, or that Lain's protected status was another motivating factor for the decision.

**b.** **Legitimate, non-discriminatory reason, and pretext**

Entergy contends that it has articulated legitimate, non-discriminatory reasons for Lain's demotion. Entergy follows a Step Progression, and linemen are informed that they are expected to progress from Helper to Sr. Mechanic within six years. [Cupit Declaration, Doc. No. 40-9 p. 2; Ryan McLemore Declaration, Doc. No. 40-11 p. 2]. The expected time period for progression is much shorter than six years for employees who are hired at the higher level of Mechanic II and are progressing only one step to the top level of Sr. Mechanic. [Id.] Lain worked in Fort Polk for two and a half years without asking to move to Sr. Mechanic because he felt he "hadn't been there that long." [Lain Deposition, Doc. No. 40-2 pp. 18-19, 25-27, 28-29].

In his year 2015 performance review, Cupit told Lain to "step up and take more responsibility for his training and skills development to be considered for Sr. Mechanic." [Lain Opposition, Doc. No. 45 p. 11]. The "Fatal Five" are safety rules that all Entergy employees must follow because a violation of any one of which could be fatal. [*Id.*, p. 7; Doc. No. 40-2 p. 62]. All line employees are tested on their understanding of these rules. [Lain Deposition, Doc. No. 40-2 p. 62; Cupit Declaration, Doc. No. 40-9 p. 4]. Lain failed the Fatal Five testing in October 2016. [Lain Opposition, Doc. No. 45 pp. 12-13].

Lain received a PIP in November 2016 that informed him he needed to prepare himself for progression to Sr. Mechanic and that he must successfully pass the Fatal Five Rules testing. [Doc. No. 40-2 p. 155, ¶ 2; Doc. No. 45 p. 13]. Lain's initial deadline to complete the PIP was February 15, 2017, but Cupit extended the deadline in order to allow Lain more time. [Cupit Declaration, Doc. 40-9 p. 4]

On March 2, 2017, in Lain's 2016 performance evaluation, Cupit again noted that Lain needed "to take steps to become a Sr. Mechanic . . . Russell seems to be complacent with being

a Mechanic II and that is not acceptable." [*Id*., pp. 5, 30-36]. Months after receiving his PIP, Lain

underwent six written tests to determine his readiness to move to Sr. Mechanic, and he "failed

them all." [Lain Opposition, No. 45 pp. 13-14]. The evaluator even stated that Lain did not

demonstrate a proficiency at even his own job, much less the higher position of Sr. Mechanic.

[Cupit Declaration, Doc. No. 40-9 pp. 5, 41].

A few weeks later, Lain again took and failed two Fatal Five Rules safety certifications.

[Lain Deposition, Doc. No. 40-2 pp. 72-74; 161-164, 171-173]. His failure to pass Fatal Five

testing twice underscored Cupit's own assessment that Lain was not improving and not likely to

progress to Sr. Mechanic. [Cupit Declaration, Doc. No. 40-9 p. 6]. Cupit did not want to

terminate Lain, so he re-located him to an open Meter Services Installer position. [*Id*., p. 6].

The Court finds that Entergy has, at the very least, clearly articulated legitimate, non-

discriminatory reasons for Lain's demotion.  Lain does not dispute that he was told he needed to

advance to Sr. Mechanic, that he failed the Sr. Mechanic test after many years working as

Mechanic II, that he failed the Fatal Five tests on two separate occasions, and that he failed to

meet the requirement of his PIP, even after being granted an extension.

Therefore, any "inference of discrimination disappears." *Davis v. Dallas Area Rapid

Transit*, 383 F.3d 309, 319 (5th Cir. 2004).  Further, at this point, Lain bears the ultimate burden

to show Entergy's reason for demoting him is pretext for race discrimination. *See McCoy v. City

of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007). To do so, Lain must "show something beyond

disagreement with the employer's decision." *Wilson v. New Wendy's, Inc.,* No. 3:18-CV-01049,

2019 WL 6247823, at *4, 6 (W.D. La. 11/20/19) (*citing Bryant v. Compass Grp. USA Inc*., 413

F.3d 471, 478 (5th Cir. 2005)).

A plaintiff can establish pretext by either evidence of disparate treatment or by showing "the employer's proffered explanation is false or 'unworthy of credence.'" *Thomas v. Johnson*, 788 F.3d 177, 179 (5th Cir. 2015).  Employment discrimination laws were "not intended to be a vehicle for judicial second-guessing of employment decisions nor [are they] intended to transform the courts into personnel managers." *Moss v. BMC Software, Inc.,* 610 F.3d 917917, 926 (5th Cir. 2010).

"[T]the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 143 (2000) (internal quotation and citation omitted).

Here, Lain argues that Entergy's articulated reasons for his demotion are pretext because he was qualified and in fact performed the duties and the responsibilities of a Mechanic II and a Senior Mechanic.  Additionally, Lain contends that Entergy's refusal to adhere to its own training policy and provide him with retraining opportunities instead of demoting him, is pretextual. Lain further argues that Cupit's assessments of his abilities depended entirely on the opinions given Cupit by Lain's coworkers.  Lain concludes that, coupling the above assertions with the fact that there is no evidence of Entergy hiring any African American at its Winnsboro location, a reasonable trier of fact could readily conclude that Entergy's proffered reasons for demoting him are but a mere pretext to hide its true motive.

The Court concludes that Lain has failed to establish pretext.  Entergy's evidence is uncontroverted that Cupit hired and demoted Lain, which the Fifth Circuit consistently holds establishes an inference of non-discrimination. Under the same actor defense, when the person who hired the individual also took the adverse employment action, and when the adverse action occurred within a relatively short time, a strong inference exists that discrimination was not a

determining factor. *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 229 n. 16 (5th Cir.2000) ("The 'same actor' inference. . .gives rise to an inference that discrimination was not the motive behind plaintiff's termination.")

Further, it is uncontroverted that Cupit (and Bordelon) never made any racial remarks, that Cupit wanted him to advance to Senior Mechanic, that Cupit included favorable comments about Lain in his evaluations, that Cupit gave Lain an extension to meet the terms of his PIP, and that Cupit found an alternative position for Lain in order to avoid terminating him.

Lain also offered no evidence that any alleged racial discrimination affected the results of his Sr. Mechanic or Fatal Five testing, and no evidence of any discriminatory motive by any of the Sr. Mechanic or Fatal Five evaluators/testers. Although Lain suggests that Cupit targeted him alone for the Fatal Five testing, he presented no evidence that Cupit is the person who selected or scheduled him for the testing or that the testing was off-cycle. Indeed, the summary judgment evidence shows many people participated in the Fatal Five testing when Lain failed it. [Cupit Declaration, Doc. No. 40-9, pp. 46-47].

Although Lain focuses his argument on alleged discriminatory statements by two of his co-workers, Easterling and Blackwell, he offered no evidence that either of these two coworkers played a role in his testing failures.

In support of his allegations of racial discrimination, Lain states that no African American employees were hired in the Winnsboro office in the last decade and/or after his termination. [Lain Opposition, Doc. No. 45 p. 9]. Even if that were so, he ignores that Cupit (and Bordelon) oversaw a larger territory in which they hired and supervised other African American employees, and Lain does not dispute that Cupit supervised two other Senior Mechanics who

were African American, both of whom remained successfully employed under Cupit. [Doc. No. 40-1 p. 24; Doc. No. 49-9 p. 7; Doc. No. 45 p. 9 n. 30].

Additionally, Lain cannot show pretext by simply saying Entergy did not hire any African American employees (in the Winnsboro office only), especially without showing what, if any, openings existed or whether any African American applicants applied for openings. See *Crawford v. David's Bridal, Inc.*, 2009 U.S. Dist. LEXIS 8779, at *14 (E.D. Mich. Feb. 6, 2009) (plaintiff failed to establish pretext based on claim that no black store managers worked under district manager, as there was no evidence given regarding the race of applicants for store manager positions); *Hercules v. Dep't of Homeland Sec.*, 2008 U.S. Dist. LEXIS 35037, at *58-59 (N.D. Cal. Arp. 28, 2008) (plaintiff failed to establish pretext based on claim that no black officers had been promoted, as plaintiff failed to provide any supporting evidence and to identify which promotions were available, and when, and which candidates were qualified for them, and who got them).

Lain's own belief that he considers himself to be "qualified" is irrelevant and insufficient because "an incorrect belief that an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason." *Richard v. Cingular Wireless LLC*, 233 Fed. App'x. 334, 339 (5th Cir. 2007) (quoting *Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991); *See Memberu v. Allright Parking Sys.*, 93 Fed. App'x. 603, 609-610 (5th Cir. Mar. 2, 2004) (plaintiff's assertion that he was more qualified for position based on plain statement in his affidavit and which failed to contradict statements of defendant regarding plaintiff's qualifications was insufficient to establish pretext in connection with discriminatory demotion claim).

Lain must produce substantial evidence of pretext in order to survive a motion for summary judgment. *Auguster v. Vermilion Parish School Board*, 249 F.3d 400, 402–403 (5th Cir. 2001). A plaintiff's subjective belief that he was the victim of intentional discrimination is insufficient to create an inference of discriminatory intent. *Roberson v. Alltel Information Services*, 373 F.3d 647, 654 (5th Cir.2004).

Lain failed to carry his burden of showing pretext. Accordingly, the Court GRANTS Entergy's motion for summary judgment as to this claim, and Lain's claim of racial discrimination is DISMISSED WITH PREJDUCIE.

### 2        Intentional Infliction of Emotional Distress

Entergy contends that it is entitled to judgment as a matter of law dismissing Lain's claim for intentional infliction of emotional distress.  Lain does not oppose Entergy's contention.

A claim for intentional infliction of emotional distress is governed by Louisiana's one-year prescriptive period found in LSA-C.C. Art. 3492, which begins to run from the day the injury occurs. *Schexnaydre v. Entergy Operations, Inc.,*2016 U.S. Dist. LEXIS10137, *3-4 (E.D. La. Jan. 27, 2016). The filing of a charge with the EEOC does not toll prescription. *Id*. Thus, conduct occurring more than one year before Lain filed his complaint (in other words, conduct before August 2, 2018) is time-barred. Lain last worked in October 2017, shortly before his hospitalization. Lain did not file suit until nearly two years later. Therefore, his tort claim is untimely.

Accordingly, the Court GRANTS Entergy's motion for summary judgment as to this claim, and Lain's claim for intentional infliction of emotional distress is DISMISSED WITH PREJUDICE.

### 3. Hostile Work Environment

Entergy contends that, although Lain has not pled a hostile work environment claim, to the extent he may be asserting such a claim, it is entitled to judgment as a matter of law dismissing it. Lain does not oppose Entergy's contention.

Lain alleged "discrimination" under Title VII, but he did not allege he was subjected to a hostile work environment, did not use the words "harassment" or "hostile work environment," and did not allege any of the elements of such a claim (including that he was subjected to unwelcome conduct, that the conduct was severe or pervasive, or that the conduct affected a term and condition of his employment).

Even assuming that Lain's co-workers Easterling and Blackwell made racial statements, Lain failed to report such conduct during his employment. To establish a claim of hostile work environment on the basis of race, a plaintiff must demonstrate that: (1) he belongs to a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on his membership in the protected class (race); (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *See Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) (*citing Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)). Lain cannot meet the fifth element because he never reported the conduct and never gave Entergy an opportunity to take remedial action. Workplace harassment victims have an affirmative obligation to report alleged harassment. *Woods v. Delta Beverage Group, Inc.,* 274 F.3d 295, 299-300 (5th Cir. 2001). An employer "cannot be held liable for conduct of which it had no knowledge." *Id.*at 299.

It is undisputed that Lain and his co-workers attended computer-based discrimination and harassment prevention training on numerous occasions, and, during each training, Lain was informed of his obligation to report behavior that could be considered harassing in nature. He was given a telephone number as well as a website at which he could promptly report any discrimination, harassment, or retaliation.  [Lain Deposition, Doc. No. 40-2, p. 39, and Exhibit 5].

Lain said he heard Easterling and Blackwell make racial remarks, nearly twice a week, beginning in 2016. Lain was aware of the Ethics Line and his obligation to report the alleged behavior, yet in the nearly three years he worked in Winnsboro, he never once called the Ethics Line to report the alleged racial behavior. [*Id*.] Nor did he report any of the alleged racial comments to his supervisor or to Human Resources. [*Id*., pp, 39-40, 89, 97, 111-112]. At most, Lain said he complained to Cupit that co-workers "called him names," but he did not disclose the racial nature of the names:

> Q.     Do you remember specifically, telling Mr. Cupit that anyone has said to you that had any racial content to it, if anything?
>
> A:     I said they called me names, I said –I complained to him how they was calling me names, and he didn't do nothing about it.
>
> Q:     Did you tell him what names they were calling you?
>
> A:     I just told him they was calling me names and he didn't do nothing about it.

[Id., pp. 111-112].  "Where an employer has 'provided a proven, effective mechanism for reporting and resolving complaints of sexual harassment, available to the employee without undue risk or expense,' and the plaintiff 'unreasonably failed to avail herself of the employer's preventative or remedial apparatus . . . no liability should be found against the employer who has

taken reasonable care." *Giddens v. Community Educ. Centers, Inc*., 540 Fed.App'x.381, 389 (5th Cir. 2013); *see also Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 329 (affirming summary judgment because the employer "took prompt remedial action as a matter of law, because Hockman unreasonably failed to take advantage of corrective opportunities provided by Westward").

Here, Lain gave Entergy no opportunity to investigate or take remedial action. Accordingly, to the extent Lain is making a claim for harassment or hostile work environment, Entergy is entitled to judgment as a matter of law dismissing such a claim with prejudice.

**III.    CONCLUSION**

For the foregoing reasons, the Motion for Summary Judgment [Doc. No. 40] filed by Entergy is GRANTED, and all of Lain's claims are DISMISSED WITH PREJUDICE.  All pending motions are DENIED AS MOOT.

**Monroe, Louisiana,** this 14th day of July, 2021.

**TERRY A. DOUGHTY**
**UNITED STATES DISTRICT JUDGE**